```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DARRIN HATWOOD,

                Plaintiff,
                                        MEMORANDUM & ORDER
           -against-                    08-CV-1127 (JS) (WDW)

MANHATTAN BEER DIST. LLC,

                Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:     Darrin Hatwood, Pro Se
                   71 Irving Avenue
                   Wyandanch, NY 11798

For Defendant:     Amy Joy Traub, Esq.
                   Eric B. Topel, Esq.
                   Epstein Becker & Green P.C.
                   250 Park Avenue
                   New York, NY 10177
```

SEYBERT, District Judge:

Plaintiff, Darrin Hatwood ("Plaintiff" or "Hatwood"), commenced this action on March 18, 2008 alleging that Defendant, Manhattan Beer Distributor, LLC ("Manhattan Beer") terminated his employment because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e17 ("Title VII") and New York State Executive Law § 296.[1]  Presently before

---

[1] Plaintiff also mentions 42 U.S.C. §§ 1981, 1983, 1985, and "any related claims under New York Law[,]" but does not elaborate any further.  As to his claims under Section 1981, Plaintiff does not allege that the Defendant's actions in any way interfered with is right to enter into contracts.  With regard to Section 1983, Plaintiff does not and cannot allege that the Defendant is a state actor.  Finally, with regard to Section 1985, Plaintiff fails to allege a conspiracy to deprive him of his constitutional rights.  Accordingly, Plaintiff's claims based on these statutes are dismissed.

the Court is Defendant's motion for summary judgment. For the reasons discussed below, Defendant's motion is GRANTED.

BACKGROUND

Manhattan Beer is a distributor of popular brands of beer and other beverages, with facilities in the Bronx, Brooklyn, Suffern, Queens, and Wyandanch, New York. (Def.'s 56.1 Stmt. ¶ 1.) Hatwood began working as a Forklift Operator at the Wyandanch facility of Manhattan Beer in April 2003. On August 2, 2004, Hatwood was promoted to the position of Night Operations Supervisor (Routing) at the Wyandanch facility. (Def.'s 56.1 Stmt. ¶¶ 5-7.) After his promotion, Hatwood had a black supervisor, Warren Sands ("Sands"). Plaintiff does not dispute that Sands was his manager, but states that because his shift started while another manager was on duty, he had multiple managers. (Pl.'s 56.1 Counter-Stmt. ¶¶ 7-11.) As the Night Operations Supervisor (Routing) at the Wyandanch facility, Hatwood was responsible for, among other things, supervising the loaders and performing all functions associated with the routing, loading, unloading and checking of trucks and inbound and outbound freight on a nightly basis, including ensuring that all trucks are secured and parked safely once loaded. (Def.'s 56.1 Stmt. ¶ 12.)

On the evening of September 28, 2006, 218 cases of beer were stolen from the Wyandanch facility ("Theft"). (Id. ¶

2

13.) Hatwood was on duty the evening of September 28, 2006, along with three other supervisors and managers--Robinson Perlata ("Perlata"), Night Supervisor, Greg Milau ("Milau"), Assistant Night Manager, and Sands. (Id. ¶ 14.) On the morning of September 29, 2006, a Manhattan Beer driver reported the beer missing from his delivery truck parked at the Wyandanch facility.

Immediately following its discovery of the September theft, Manhattan Beer senior management launched an investigation and learned the following: a group of at least four Manhattan Beer employees, Peter Tomlin ("Tomlin"), Elvin Ayala ("Ayala"), Calvin Grayson ("Grayson"), and Perlata (1) had started stealing beer during the summer; (2) were selling the stolen beer to retail outlets, beer distributors, and consumers; (3) were responsible for the Theft; and (4) were planning to steal additional beer in the near future. (Id. ¶¶ 15-17.)

On October 27, 2006, all of the supervisors and managers who were on duty during the Theft, as well as the employees who were directly implicated in the Theft were terminated. (Id. ¶ 18.) Some of the terminated individuals, including Hatwood, asked to be allowed to resign and were permitted to do so. (Reif Decl. in Supp. Summ. J. ¶¶ 4-5, DE 49; 1, Hatwood Dep. at 30-33, 58.) Specifically, Manhattan Beer dismissed three employees who were directly implicated in the

3

Theft (Tomlin, Ayala, and Grayson), all of whom reported to Hatwood and the other supervisors and managers on the night shift, for their inappropriate behavior and misappropriation of Manhattan Beer property. Tomlin is Black, Ayala is Hispanic, and Grayson is Black. Perlata, a Hispanic Supervisor who was on duty the evening of September 26, 2008, was terminated because of his involvement in the Theft, his inappropriate behavior, his misappropriation of Manhattan Beer property, and because Manhattan Beer had lost confidence in his ability to manage and supervise his crew and effectively perform his duties. Finally, Hatwood, Milau, and Sands, who were also on duty at the Wyandanch facility on the evening of September 26, 2008, were terminated based on Manhattan Beer's lack of confidence in their ability to supervise or manage their crew and their failure to effectively perform their duties. Milau is White. (Def.'s 56.1 Stmt. ¶¶ 19-26.)

On or about August 14, 2007, Hatwood dual-filed a Verified Complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"), charging Manhattan Beer with race and color discrimination. On November 30, 2007, the NYSDHR issued a Determination and Order After Investigation and found no probable cause to believe that Manhattan Beer had engaged in or was engaging in the unlawful discriminatory practices complained

of by Hatwood.  The EEOC subsequently adopted the NYSDHR's findings.  Thereafter, Plaintiff obtained a right-to-sue letter, and commenced this action.

## DISCUSSION

I. <u>Standard of Review Under Federal Rule of Civil Procedure 56</u>

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 213 (1986); <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997).  "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>McLee</u>, 109 F.3d at 134.  The burden of proving that there is no genuine issue of material fact rests with the moving party. <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing <u>Heyman v. Com. & Indus. Ins. Co.</u>, 524 F.2d 1317, 1320 (2d Cir. 1975)).  Once that burden is met, the non-moving party

must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 258, 106 S. Ct. at 2515, 91 L. Ed. 2d at 218. "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

"Summary judgment is appropriate even in discrimination cases, for, as this Court noted, 'the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than to . . . other areas of litigation.'" Weinstock, 224 F.3d at 41 (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). At the same time, courts must be particularly careful when deciding a motion for summary judgment in an employment discrimination case as the "employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999); see also Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994) ("Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's

6

corporate papers, affidavits, and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.") Therefore, a court should only grant an employer's motion for summary judgment when "the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor." Viola v. Philips Medical Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994).

II. Title VII and New York Executive Law § 296

    A. Burden-Shifting Analysis

Discrimination claims under New York Executive Law § 296 are analyzed similarly to claims brought under Title VII. See Pratt, 2009 WL 805128, at *5; Morris v. Ales Group USA, Inc., No. 04-CV-8239, 2007 WL 1893729, at *11 (S.D.N.Y. June 29, 2007); Stephenson v. Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO, 6 N.Y.3d 265, 270, 844 N.E.2d 1155, 811 N.Y.S.2d 633 (2006).

Title VII claims are analyzed under the McDonnell Douglas three-step, burden-shifting framework. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). To establish a prima facie case of racial discrimination under Title VII, the plaintiff "must

7

demonstrate that: (1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

Once the plaintiff establishes a prima facie case of discrimination, a rebuttable presumption of unlawful discrimination arises. See McPherson v. New York City Dept. of Educ., 457 F.3d 211, 215 (2d Cir. 2006). The defendant, then, has the opportunity to rebut the presumption by establishing a legitimate, non-discriminatory reason for the allegedly discriminatory action. See McDonnell Douglas, 411 U.S. at 802. If a legitimate, non-discriminatory reason is established, then the burden shifts back to the plaintiff to prove that the reasons provided by the defendant are a pretext for discrimination. See McPherson, 457 F.3d at 215.

### B. Plaintiff Fails to Meet his Burden; Defendant Successfully Established a Legitimate Non-Discriminatory Reason and Plaintiff has not Established Pretext

In this case, Plaintiff has only established two of the four requirements of a prima facie case for a Title VII claim or NYSHRL claim: namely, Defendant is a member of a protected class and he suffered an adverse employment action

when he was terminated. But the circumstances of his termination, along with the termination of all other supervisors on duty during the Theft, show that Plaintiff cannot establish that he is qualified for the position and that his termination occurred under circumstances giving rise to an inference of discriminatory intent.

First, Plaintiff seems to argue that he is qualified as a supervisor even though 218 cases of beer were stolen while he was on watch. Simply put, under those circumstances, it is incredible for Plaintiff, or any other supervisor on that shift, to argue they are qualified for the position. Moreover, Defendant provides overwhelming evidence here that <u>all</u> of the supervisors on shift during the Theft were terminated, regardless of their race. In support of his case, Plaintiff asserts that white supervisors were treated more favorably by being given the opportunity to resign and not be terminated. But the evidence bears out a different story; several of the non-white employees, including Plaintiff, were given the option of resigning by Defendant or asked for and received the option to resign.

Even if Plaintiff satisfied the requirements of a <u>prima</u> <u>facie</u> case, Defendant has given overwhelming evidence that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment: "As a result of the theft, Manhattan

Beer lost confidence in the abilities of Hatwood and the other supervisors and managers on duty the night of the theft to perform their jobs, and specifically, to supervise or manage their crew." (Def.'s Mem. in Supp. Summ. J. 1.) Given the magnitude of the Theft, a reasonable employer would question both the honesty and competence of those in charge of supervising operations. And after a thorough review of Plaintiff's submissions, the Court finds no evidence to support the conclusion that Plaintiff's termination was pretextual.

Accordingly, the Court concludes that the evidence of discriminatory intent and pretext is so slight that no rational jury could find in Plaintiff's favor. <u>Viola v. Philips Medical Sys. of N. Am.</u>, 42 F.3d 712, 716 (2d Cir. 1994).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion is GRANTED. The Clerk of the Court is directed to mark this matter CLOSED.

                                      SO ORDERED.

                                      <u>/s/ JOANNA SEYBERT</u>
                                      Joanna Seybert, U.S.D.J.

Dated:     September 30, 2010
           Central Islip, New York